Good morning, everyone, and welcome to the Ninth Circuit. I want to thank my colleagues, Judge Fernandez and Judge Tashima. Not to make them feel old, but I was a law clerk on the court once upon a time when they were judges, so it's actually a great honor and a little bit intimidating to be presiding today. But they're two nice guys, so I think it's going to work out. We have four matters that have been submitted on the calendar, Clardy, Sanchez Valencia, Federal National Mortgage Association, and Torres. We have two cases to be argued. Counsel, just remember to keep track of your time. The clock runs backwards, and if you make all your points and there's still time on the clock and we're not asking any questions, it's okay to sit down. As I always say, there are no bonus points for using all of your time in the Ninth Circuit. And with that, we'll go ahead and call the first case this morning, hopefully I'm pronouncing this correctly, Tijerino v. Stetson Desert Project. Counsel? Good morning, Your Honors. May it please the Court. My name is Andrew Sterling. I represent the plaintiff appellants in one of the three consolidated cases in this appeal, but I will be speaking today on behalf of all of the plaintiff appellants in the three cases. Your Honors, this is a misclassification case under the Fair Labor Standards Act of 1938. It's one of scores of similar cases that have been working through the federal courts since the late 30s. The central question in all of these cases is whether a putative employer has misclassified the workers for purposes of federal wage and our laws. We're asking this Court to review two, in our mind, clearly erroneous rulings by the trial court below. The first ruling is to dismiss with prejudice our cases for lack of subject matter jurisdiction on the grounds that, in the Court's view, we would not be able to prove that our clients are, in fact, employees. And the second issue is the denial of the Court or the refusal of the Court to conditionally certify an FLSA collective. And this Ninth Circuit recently addressed that issue at length in its 2018 decision in Campbell. We do believe, under abusive discretion standard, the lenient standard was met, and this Court should order on remand that the class or class collective be conditionally certified. With respect to issue number one, to the best of my knowledge, this would be the first case since the FLSA was enacted to dismiss a well-pled complaint alleging a violation of the FLSA for lack of subject matter jurisdiction. It would also be the first case to dismiss a case for lack of subject matter jurisdiction with prejudice. I think that second question is quite clear. If the Court were to dismiss a case for lack of subject matter jurisdiction, sort of by definition, it couldn't reach the merits, and the dismissal should be without prejudice. However, on the actual merits, the case of Arbol v. YNH, Supreme Court of Chicago, the case of Arbol v. YNH, which is the Supreme Court of Chicago, in 2006, is dispositive. The Supreme Court in that case expressly identified the issue that occurred here. The quote in that case is that subject matter jurisdiction in federal question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as a predicate for relief, which is a merits-related determination. And the Court kind of went through, and that was an FMLA case, but it's since been sort of articulated in the Title VII context, and also we've cited nine cases where trial courts have considered it in the FLSA context, and the answer is always the same. Under the Arbol Brightline Rule, whether or not a plaintiff is an employee is the central merits determination in an FLSA case. And so in all of these cases, courts hold that it is appropriate to address those issues, either under rule of law or under a presumption of merit. And so it's not just a matter of, you know, rule 12 or rule 56, or have it go to the jury. And counsel, you mentioned the different mechanisms to assess this. Can you remind me what, in terms of discovery, was actually taken on this issue? Well, there was, I guess, limited provisional initial discovery. There was some confusion on my part, since I wasn't aware of sort of a subject matter jurisdiction discovery. As best I, there is some precedent pre-Arbol to what's called a factual attack to subject matter jurisdiction, where it's a subject matter where issues can be delved into, but they have to be collateral to the merits-related determination. How about in this case, what discovery was taken? Now, it was several years ago, but there were some depositions that were taken. There were affidavits that were submitted. I don't, there might have been some interrogatories that were propounded. So there was an initial round of discovery. Depositions of who, or what kind of person? We believe the defendant took the deposition of the, some of the named plaintiffs. What about the plaintiffs? Did you take any discovery? Yes, sir, I believe we did. You took discovery of whom? On what subject? I believe we took the deposition of the PMK for the entity, and also the owner in his individual capacity. And again, I guess our issue is, you know, now we've cited 27 cases. Now, this is a case involving exotic dancers. There are 20, I believe 7 or 29 cases in the books determining this precise question in favor of dancers on the merits. There are no cases, or maybe there's one sort of outlier on the other side, but, you know, we were at least at that point somewhat assuming that this would be, you know, whether a summary judgment issue or a full-blown trial. The reason why I was asking the question was, is that I'm assuming your opposing counsel, he's going to stand up and say, well, wait a second, there was discovery on this issue, there was a factual contest on this. District courts can take issues out of order if they think it's more efficient to do that. So where's the harm here? And what would your response to that be? Well, the harm is several fold. First of all, this is a sua sponte 12B1 motion. There was no articulation, or there was a moving standard that we had to meet. At the threshold, I believe the standard was that we had to articulate sort of some rational basis or some plausible inference, some fact that could support an inference that we would state a claim. So kind of like a quasi 12B6 standard. Now, we clearly did that. The court found that four out of six of the totality of the circumstances test weighed in our favor. But in the ruling, in actual fact, the ruling appeared to basically just apply a preponderance of the evidence standard against us and require us, without any protections afforded by Rule 56, or frankly by our right to a jury trial, to have these disputed issues of fact resolved by a fact finder. And obviously at summary judgment, we would have all these facts resolved in our favor. And it appears that was not done. I mean, it was not done. The court ruled as a matter of law that it did not believe on the facts presented that we had met effectively our burden of proof as a threshold matter of summary, you know, as a summary, sorry, as a matter of subject matter jurisdiction. Now, if you get what you want, which is us to send this case back, what further factual development would you be looking to do on this issue? Because eventually you do have to, you agree you have to prevail on this issue at some stage. Absolutely. And we would like the opportunity to brief the issue under Rule 56. We'd like the opportunity to, we believe we have a very strong case. Now, again, this judge has kind of indicated, you know, that the precedent on the matter is not persuasive in this judge's mind, and that's the judge's right. So we, if this judge were to preside over this matter on remand, then we would likely not prevail at summary judgment as a matter of law. But we absolutely believe if the correct standard is applied and subject to de novo review, we believe we would absolutely survive summary judgment, and we would have that issue tried to a jury. But in terms of factual development at the Rule 56 stage, is there any further factual development you feel you would want to do that you have not done at this point? Yes, absolutely, because we, because... What would that be? Well, we have, we'd like to, we've identified numerous employees of the club, bouncers, former managers, that we believe will give a much fuller view of the facts than the PMK did at the deposition. And they have not, these bouncers have not been deposed? No, they have not. Okay. Thank you. And again, you know, we would then, and now this is, again, there is some dispute over the standard of review. The appellee would prefer to have abuse of discretion apply because this would, I guess it was viewed as sort of a case management authority, sort of inherent discretion of the court to sort of decide this issue. The case law is quite clear that we are up on de novo review of the subject matter jurisdiction issue. And again, to the court's point, we absolutely believe that we're entitled to the rule. Rule 56 does provide procedural safeguards. For example, in this case, we weren't permitted a reply. Now, again, perhaps that's my inexperience to sort of just sort of take it upon myself to file a reply when one was not requested by the court. But, you know, the court requested on an order to show cause that I provide prima facie evidence that I deserve to go forward with my claim. We believed I did that. The defendant took it upon himself to file an opposition. And then it became, you know, again, it became basically a sort of quasi-trial on the merits. And so we do believe that we're entitled to remand on that issue. And again, the Arbor case is quite clear in terms of the importance of providing a plaintiff with adequate procedural safeguards. And that's Rule 56 safeguards. The court relied on two cases for its authority to do what it did. Rutherford Food, which is a 1940s Supreme Court case. The court in that case affirmed a circuit court case reversing a district court case on the merits. Meat boners are employees. The Supreme Court ruled in that case. Again, that's the way the FLSA works. We have merits determinations one way or the other. The other case the court cited was Dellinger. That was a Rule 12b6 case. The FLSA, we learned from that case, does not apply to prospective employees. The plaintiff in that case alleged she was a prospective employee and the FLSA gave her certain rights. And the court correctly ruled in that case, no, as a matter of law, your claim under the facts you've alleged don't provide you with any grounds for relief. But even that was 12b6. And again, 12b6 is a merits-related determination. This simply was not. Again, the appellee in this case has sort of moved those two cases to one side and basically relies on what it calls inherent case management authority. Again, we just believe this exceeds the limits of inherent power to manage a case by treating a merits, the central merits question as a threshold sort of question of subject matter jurisdiction. Again, it's like the Uber case. I mean, there are lots and lots of cases. Uber has a great and fascinating question. Should its drivers be classified as employees? And the courts are all over the place. There's class actions, you know, moving forward and settlements and so on. But no one is ever suggesting that Uber drivers, that the federal courts lack subject matter jurisdiction to hear that case because the Uber drivers might lose on the merits. And that's, so again, we're just kind of confused as to why that should apply in our case when no other case since the late 30s. Counsel, on this issue, I'm trying to remember in this record, did anyone move to have the case adjudicated under 12B1 or was that the district court on its own? That's sua sponte and the defendant did not raise the issue. And again, we've cited nine cases in the FLSA context where defendants have raised that challenge. And all of those cases, this is on our brief at page 20, all of those district courts rejected that argument on the grounds that we're now suggesting. The second issue is the Campbell issue. I'd like to reserve three minutes for rebuttal, but again, it is clear that the district court may abuse its discretion as this court held in Campbell by refusing to follow the few dictates provided by in the FLSA for what's called conditional certification. Now, it's true this is a judicially created construct, but this circuit, that's what this circuit did in a very detailed fashion in Campbell. And it suggested that we have a lenient standard at the initial certification stage that is clearly met and the Arizona district court has the same standard in play, that when we allege allegations in our complaint that we're victims of a single plan or policy, conditional certification is appropriate with leave, of course, to move at a later stage of discovery for decertification. Again, we believe that's... Now, again, the court here never reached that question because it said it was premature. We do believe on the record this court has authority to determine that that lenient standard was met and should remain with instructions to certify at the conditional stage in FLSA clause. You want to reserve? Yes, please. Good morning, Your Honor. My name is Laurent Badu from the Bud Calter Firm. I represent Sletzen Desert Project and Corey Anderson, the defendants in this action. I'll be referring to them generally as my clients or the club or the establishment to discuss the operations of the business. And I apologize, that's two foreign accents that you have to deal with in one single oral argument. I empathize, but there's nothing either of us can do about it, unfortunately. There are two issues, and I think you touched upon them, Judge Owens. The main one is the flexibility of the court. We have two primary components, an abuse of discretion as to whether a trial court judge has the discretion to determine that certification under Section 16B of the FLSA is inappropriate in a particular case. And then you have the secondary issue, which is actually sort of at the core here, which is under what circumstance can a court decide to take certain matters in a different order than what the parties may be used to. And that's sort of what this case is about, is about case management. Except that it's pretty clear that Judge McNamee approached this as a jurisdictional issue, didn't he? And isn't that the contrary to the case law? Well, it's a matter of nomenclature more than it is a matter of the substance. I don't think so. Tell me why he wasn't mistaken in approaching it as a jurisdictional issue. Well, Justice Shima, if you harken back to some of the cases that you had, for instance, when you had prison detail performing services and making claims that they were entitled to the Fair Labor Standards of Protection, you had to rule on some of these issues as to whether they were employees to begin with in the context of these cases. This issue came to Judge McNamee's attention on the dancers' motion to have collective action certification heard. And as they did that, they included the agreement that they have with my clients, according to which they are licensees, not employees of the club. That created a red flag, because in the same breath that you're saying, we're similarly situated because we all have this agreement, this agreement also says we're not employees. And that's sort of the genesis of why Judge McNamee escalated this particular issue to the forefront to try to address it. Because obviously, if the individuals who are making the claims are themselves stating they're not employees as part of their declaration in support of the Rule 16b motion, it creates an issue in terms of the latitude that the court has and how it employs its discretion in addressing the request that's being made by the moving party, by the claimants in this particular case. So I think the issue that we have is not different than when we have bifurcation of cases. A couple of cases that we've handled in the same district court with different judges. We had a case with Judge Wake, City of Belmonte versus City of Mesa, where we bifurcated the issue of whether donning and doffing for a police officer was an issue that ought to be compensable to begin with. So we bypassed essentially a significant amount of the discovery to front load this particular issue. In the request that Judge McNamee makes of the plaintiffs as he's denying their motion for conditional certification, he's asking for a briefing on the issue of whether the individuals are employees or not. At that particular stage, we had already exchanged discovery. The case started in December of 2015. So the first two claimants, Tahirino and Tolliver, filed their lawsuit then. February 2016, the other plaintiffs who were later consolidated filed their action. The answer was filed, I believe, on May 1st. And the Rule 16 Conference was held in July. The preliminary first-step motion for certification of the collective action was filed in June of 2016. So we're not talking about being at the very beginning of a case, one or two months into the whole process. Discoveries had already been exchanged between the parties. Not just the initial disclosures, but actual discovery exchanged by the parties. As we indicated, as you saw probably in a briefing, my client do not have extensive policies in contrast to a lot of other clubs that may be out there. So there isn't a tremendous amount. To go back to a question you asked earlier, Judge Owens, there really isn't an awful lot of additional information that could be adduced in this particular case. It would be a redundancy of a number of additional witnesses. But I interviewed the two lead plaintiffs. I took their depositions. My colleague requested the deposition of a 30B6 corporate representative, which was provided and took an entire day, dealt with every single issue of operations of the company, addressed policies that were in place, and just the overall operations of the club. When we're talking about where we stand in this particular case, it is truly no different than if Judge McNamee had elected to bifurcate discovery, which, by the way, the parties agreed would be a positive thing to do in this particular case. That's part of the joint case management plan that we submitted. The other element that I would bring up, we have to be flexible. When a judge says, this is an issue that matters to me, we have to address it. The plaintiffs, the answers in this case, made a strategic decision based upon the judge's statement to not provide any evidence in support of their position, to just simply go with allegations. Whereas we provided actual declarations and actual statements from the plaintiffs themselves to their deposition, and a 30B6 representative, plus additional supporting documents. It was nothing precluding the dancers from asking for the same, either at the onset, maybe a motion for a clarification as to what would be allowed by the court. There was no request that was made over the course of the proceedings for a delay, as you would have under 56F, to take additional discovery that would be required to address the issue. None of that was brought up. The issue that we've had is three separate motions for reconsideration of the denial of the certification motion. That also is a little bit of something that's mislabeled, I think, in the moving papers and briefs. We concur with the appellants as to the standards. It's, one, the discretion of the court, which is reviewed in terms of how it manages its docket's caseload for an abuse of discretion. And the second is the standard for review of the determination that the court made as to whether the individuals were employees under the FLSA. And that's a de novo review. That's on page 10 of our brief. And we believe that the assessment that the court reached of the balance of the six factors under Real versus Driscoll-Strawberry Associates, I believe, was accurate. It mirrored a previous decision from the U.S. District Court in the District of Arizona, which was upheld by the Ninth Circuit in Yonchev versus AAA cab transportation. It's the same analysis, consists of the same factors. I think the issue again here is the dancers take issue with the determination because it does not follow a dozen or two dozen other cases on the same industry. Just because one case is not reaching the same conclusion as the other doesn't mean that it is wrongly decided. Each of these cases stand on their own merit. The fact that there are significant differences from one to the other is just something that Judge McNamee had to account for. There's a suggestion that somehow it's a foregone conclusion what the judge would do on remand. Maybe or maybe not, but the issue is not what we should do on remands. Why was this not brought up to the court's attention at the time that we were at the district court level? If there was a need for additional discovery, which honestly I don't see what other need there would be for additional discovery. We'll be facing the exact same evidence if this case were to be remanded. We'd have the same statements made by the plaintiffs. They're not going to change what they said, and we're going to have the same thing from a 30 v. 6 representative. There's nothing else that he's going to say either. So these are the individuals who are most knowledgeable about this issue who have their own particular interest that they've articulated, and the court reached the determination based upon the information that was received in very much the same way as the case that the court actually cited. The dancers take issue with the standard that's applied in that particular determination, but that standard is absolutely correct. It's the right case. It's the right analysis. It's the right evaluation of the six factors that appear in Real, and ultimately it's a correct decision in terms of this particular case, which is unique in comparison to others. The court did not abuse its discretion in determining that it didn't want to certify the collective action when the very affidavit that the individuals provided created an issue as to whether the authority of the court itself was properly invoked by the plaintiffs. We have to go back to what 16B is, and we have a lot of citation in the brief relating to the standards that the Ninth Circuit has invoked for these particular cases. At the core, we're talking about a judicial creation. There is no standard that the FLSA provides for how to handle 16B action. Everything sort of, for better or for worse, spuns out of Hoffman-LaRoche v. Sperling and the progeny of cases that come from there. Hoffman-LaRoche and the Supreme Court's decision there clearly states that it is a matter of discretion of the court as to how they're going to administer the handling of the case. It originates by a request by the defense side that the plaintiff's side do not So it's been extrapolated over the years. But even in Campbell, that's cited extensively in the brief, the Ninth Circuit's panel on this particular case makes it very clear that it's okay to cobble different means of adjudicating a case and balancing the way in which you want to present it. It is absolutely fine to use a piece from this various class action if you want to do so at the cert level or use a portion of the minority view on how to handle these particular decertification questions or handle it differently at the onset. There is no harm that comes to the plaintiffs from their request for a collective action to not be certified. They are not the first to whom this has happened. There are plenty of decisions under the FLSA where federal judges have decided that you know what, this is not an appropriate case for 16b motion to certify at the onset. And this was the determination here. It doesn't affect the substance of the case for the individuals. Because under the FLSA, every individual remains bound by his or her own cause of action. Their claims stand alone even though some of them may be adjudicated commonly, each claim stands by itself. So at the core there is no impact upon their actual causes of action and their rights in this particular case. The last thing that I would say is that the plaintiffs suggest that they took quote unquote provisional discovery. Taking a 30b6 deposition that goes on for approximately 8 hours that touches on every single subject that is out there is not what I would call a provisional discovery. Sending out requests to the other side. This was in August of 2016. Sending out requests to the other side for every piece of information, every policy ever promulgated indicating sources of receipts. Literally every issue in this case was covered by the discovery that was taken up to the time and if the plaintiff felt that they needed additional time to conduct discovery that would have been useful to the court's determination, they certainly could have asked for it. You will notice that it is absent. What is present though is a stipulation to grant more time for the defendants to file their response on that particular issue. Everything was above board and it sounds more like a case of regret about how the strategic decision turned out rather than it is about the harm that actually befell any of the individuals who were laid against in this case. For these reasons we would ask the court to uphold the decision and affirm that it was properly dismissed by the trial court. Thank you counsel. Two minutes. Thank you, Your Honor. I'd like to just pick up on this strategic decision. We agree if the trial court wanted to accelerate, bifurcate and move up Rule 56 for an initial threshold determination, we would have no objection to that. We would have the ability to file for Rule 56 relief if we believe further discovery was required. But most importantly we'd have an appellate court that could review that decision, an adverse decision under de novo standard, looking at the statement of facts which was not provided in this case and we could argue that the court reached the wrong result. Here basically what we're stuck with is a masked Rule 56 decision that was, at least the court suggested, was not a Rule 56 decision. And so we do believe that is absolutely prejudicial for us for the simple reason that we're not here today arguing why the court applying the Rule 56 standard reached the wrong result. And again, if we look at the order, the instructions to us, the initial 12B1 standard that the court articulated was that we had a, quote, initial burden of alleging specific facts that permit an inference that she is an employee. So some sort of, that's really kind of a 12B6 standard. So we approach the, and again, that's not in accordance with any case law, but if that were the court's discretion, we believe we obviously accomplished that task by producing affidavits and deposition testimony and meeting four of the six elements of the test. But again, at the end of the day what was done was a merits-related determination indicated by the dismissal with prejudice, and we have no means of challenging that decision on appeal, which results in the real prejudice to us and does require the remand, even if this were an issue of first impression, which it just clearly isn't. So again, Your Honors, we do urge the court vacate this dismissal with prejudice, reinstate the case, remand for a proper merits determination. We do believe the court has authority to review the record against the standard articulated in Campbell and order that a class be conditionally certified under the FLSA. Thank you. All right, thank you, counsel. Thank you both for your argument. This matter's been submitted.
judges: Fernandez, Tashima, Owens